**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Barbara Jo Werline, | No. CV-13-02316-PHX-JZB |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, | |
| Defendant. | |

Plaintiff Barbara Jo Werline seeks judicial review and reversal of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her application for Social Security disability benefits.[1] Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Court will affirm the Commissioner's decision.

**I.  Background**

Plaintiff was born in October 1951. She has a high school education and has previously worked as a data entry clerk and telephone sales representative.

On July 20, 2010, Plaintiff filed an application for Social Security disability insurance benefits, supplemental security income, and disabled widow's benefits under Title II and Title XVI of the Social Security Act. In her application, Plaintiff alleges

---

[1] This matter is suitable for resolution based on the briefs. Accordingly, the Court denies Plaintiff's request for oral argument. *See* LRCiv. 7.2(f).

disability beginning June 1, 2007. Her application was denied initially on December 8, 2010, and upon reconsideration on May 15, 2011. On March 9, 2012, she appeared with her attorney and testified at a hearing before the ALJ. A vocational expert also testified.

On July 26, 2012, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision final.

## II.     Plaintiff's Medical History

At the end of July 2007, Plaintiff went to the emergency room complaining of nausea, vomiting, leg pain, and weakness. A.R. 649. She was admitted to the hospital with acute renal failure due to diabetes and diabetic neuropathy of the legs. A.R. 394, 397. She was discharged in good condition after several days, but returned later complaining of dizziness, weakness, increased pulse, and left leg pain. A.R. 349-56, 471-72. Plaintiff was diagnosed with gastrointestinal bleeding with anemia. A.R. 623-645. In September 2008, Dr. Mark Tosca, her treating physician at the time, noted that the diabetes was "diet controlled." A.R. 449.

Plaintiff saw Dr. Tosca in October, November, and December 2007. Dr. Tosca's notes report that Plaintiff said she was "feeling a lot better" and "doing fairly well." A.R. 457. At the same time, MRIs and x-rays of the Plaintiff's lower back revealed an old compression fracture in her mid-back and degenerative changes in her lower back. A.R. 493-94, 499, 502, 513.

In December 2007, Plaintiff saw Dr. George C. Parides and complained of increased shortness of breath and wheezing. A.R. 344-45. She reported only wheezing upon "significant exertion such as yard work." A.R. 344. Plaintiff stated that she did not feel she had "too much difficulty with shortness of breath when she [went] shopping or even walking from her car to [a doctor's office]." *Id*.

In July 2008, Plaintiff saw Dr. Tosca, complaining of right left pain. She complained she could not rest much because she was caring for five children. A.R. 444-47.

1    In March 2009, Plaintiff saw Dr. Asim Khan for pain management. She was
2 diagnosed with degeneration of the lower back with disc bulge, radiculopathy, and
3 chronic pain syndrome. A.R. 511.  On examination, Dr. Khan noted that Plaintiff was
4 able to heel-walk, toe-walk, squat, and climb up on the examination table without
5 difficulty. A.R. 514. Dr. Khan continued Plaintiff's medication management and
6 prescribed Methadone and epidural steroid injections. A.R. 511. In April 2009, Plaintiff
7 reported she was doing well. A.R. 551. She reported her pain was better controlled with
8 medication and she had no side effects. *Id*. However, she still had leg pain. *Id*.

9    In June 2009, Plaintiff followed up with Dr. Khan. A.R. 903-04. She reported
10 improvement in her pain, functioning, and quality of life with epidural injections and
11 medications. *Id*.

12   In December 2009, Plaintiff went to the emergency room because she was
13 vomiting blood and was diagnosed with gastrointestinal hemorrhaging due to gastritis
14 and esophagitis. A.R. 565. She also had gallstones and acute renal failure. She underwent
15 an ileostomy to remove a portion of her colon and her gallbladder due to infection. A.R.
16 722-23. During the surgery, she had a small heart attack. A.R. 724-27.  In January 2010,
17 Plaintiff followed up with her surgeon. A.R. 716. She reported being easily fatigued and
18 having loose stools due to the length of the small intestine that was resected. *Id*.

19   In February 2010, Plaintiff saw Dr. Sy for follow-up care. A.R. 434-35. Dr. Sy
20 noted that the Plaintiff had stopped smoking and was off her inhalers. A.R. 434. The
21 Plaintiff's physical exam was normal. The physician found a full range of motion in her
22 back. By March 2010, Plaintiff reported to Dr. Fang that she was "nearly back to full
23 activity" and that medication was helping with diarrhea. A.R. 718.

24   In March 2010, Plaintiff saw cardiologist Himanshu H. Shukla, M.D. A.R. 730-32.
25 She reported walking for exercise one to two times a week. A.R. 730. She was also
26 completing household chores. *Id*. Diagnostic tests showed Plaintiff had average exercise
27 tolerance and a normal heart rate. *Id*.

28   In December 2010, Plaintiff underwent a consultative examination by Elizabeth A.

Ottney, D.O. A.R. 768-78. Plaintiff stated that her diabetes was controlled by her diet. A.R. 771. She also said she had never been hospitalized for back pain. A.R. 771. Dr. Ottney performed a pulmonary function test and found no evidence of acute respiratory illness and said that obstruction was unlikely. A.R. 768, 773. Dr. Ottney found Plaintiff had normal muscle strength, balance, coordination, stance, gait, range of motion, and motor skills. A.R. 773. Dr. Ottney opined that Plaintiff was capable of occasionally lifting 20 pounds and frequently lifting 10 pounds without any limitations in standing, walking, sitting, climbing ramps and stairs, stooping, kneeling, crouching, crawling, reaching, handling, fingering, or feeling. A.R. 774-77.

In the same month, state agency physician Dr. James J. Green reviewed the record and opined that Plaintiff was capable of occasionally lifting 20 pounds and frequently lifting 10 pounds. A.R 50-52.

In January 2011, Dr. Shukla reported that Plaintiff had increased leg pain with walking, but no other new symptoms. A.R. 792. Plaintiff continued to exercise and participate in household chores. A.R. 793. In May 2011, state agency physician Dr. Christopher Mahoney confirmed Dr. Green's opinion. A.R. 87.

In March 2011, treating physician Dr. Sy opined that Plaintiff could lift or carry fewer than 10 pounds occasionally and frequently, stand or walk less than two hours in an eight hour day, sit only three hours in an eight-hour day, and alternate sitting and standing every half hour. A.R. 908-10. She also found that Plaintiff could never climb, balance, stoop, kneel, crouch, or crawl. A.R. 908-10. Dr. Sy found that Plaintiff could frequently handle and feel and occasionally reach and use fine manipulation with her hands, but was restricted from working around heights, machinery, extreme temperatures, chemicals, dust, or noise. A.R. 908-10.

In September 2011, Dr. Shukla reported a negative nuclear stress test. A.R. 890. In the follow-up, Plaintiff told Dr. Shukla that she was still exercising by walking a couple times a week and was able to complete household chores. A.R. 891. She denied chest pain, shortness of breath, or lightheadedness. A.R. 890.

In May 2012, Plaintiff told consultative examiner Carol McLean, Ph.D., that she got up in the morning to get her grandchildren to school and then did chores. A.R. 978-80. These chores included mopping, washing dishes using a dishwasher, laundry, and folding clothes. *Id.* Plaintiff told Dr. McLean that she bought groceries, made meals, and played games with her grandchildren. *Id.*

**III.     Standard of Review**

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F. 3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id*. In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id*. As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

**IV.     The ALJ's Five-Step Sequential Evaluation**

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404. 1520(a). The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the enquiry ends. *Id*. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical and mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id*. At step

three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id*. If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id*. If not, the claimant is disabled.

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 20, 2011. At step two, the ALJ found that Plaintiff has the following severe impairments: low back pain secondary to degenerative disc disease, peripheral vascular disease (PVD) of the lower extremities, noninsulin-dependent diabetes mellitus, gastroesophageal reflux disease (GERD) status post partial colon resection, arthritis of both knees, coronary artery disease (CAD) with hypertension and status post stent placement, and chronic obstructive pulmonary disease (COPD) with tobacco dependence. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. At step four, the ALJ found that Plaintiff has the RFC to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). The ALJ concluded that the claimant is capable of performing past relevant work as a data entry clerk and telephone sales representative.

## V. Analysis

Plaintiff argues the ALJ's RFC determination in step four was defective for two reasons: (1) the ALJ erroneously weighed medical source evidence; and (2) the ALJ improperly evaluated Plaintiff's credibility and discounted her subjective testimony. Plaintiff does not dispute steps one through three of the ALJ's disability determination. The Court will address each argument below.

### A. Weighing of Medical Source Evidence

#### 1. Legal Standard

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give the greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); 20 C.F.R. §404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Brown,* 849 F.2d 418, 422 (9th Cir. 1988)). A contradicted opinion of a treating or examining physician "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews*, 53 F.3d at 1043).

An ALJ can meet the "specific and legitimate reasons" standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). But "[t]he ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22.

1    The Commissioner is responsible for determining whether a claimant met the statutory definition of disability and does not give significance to a statement by a medical source that the claimant is "disabled" or "unable to work." 20 C.F.R. § 416.927(d).

### 2. Rachel Sy, D.O.

In assessing Plaintiff's RFC, the ALJ examined the entire record and discounted the assessments of treating physician, Dr. Rachel Sy, D.O. A.R. 125. Plaintiff argues that the ALJ committed legal error by improperly discounting Dr. Sy's opinion. Doc. 23 at 15-23. However, the ALJ afforded lesser weight to Dr. Sy's opinions because (1) the opinions were inconsistent with medical records showing Plaintiff recovered well after surgery, A.R. 129; (2) Dr. Sy's medical notes were contrary to her opinions, A.R. 129; (3) the opinions were not based on adequate clinical findings, A.R. 125; and (4) Dr. Sy's findings were contradicted by the findings of examining physician Dr. Elizabeth A. Ottney, D.O. and non-examining physicians Dr. James J. Green and Dr. Christopher Maloney. A.R. 50-52, 768-78.

On March 28, 2011, Dr. Sy filled out a check box form where she opined that Plaintiff could lift or carry fewer than ten pounds occasionally and frequently, stand or walk fewer than two hours in an eight-hour day, sit only three hours in an eight-hour day, and alternate sitting and standing every half hour. A.R. 908-10.

The ALJ's reasons for discounting Dr. Sy's opinions are specific, legitimate, and supported by substantial evidence. The ALJ discounted treating physician Dr. Sy's opinion and afforded greater weight to the opinions of non-treating sources because Dr. Sy's response to the March 2011 check box form was contrary to her own treatment notes and the medical record as a whole.

First, the ALJ found that Dr. Sy's opinion was inconsistent with the medical record showing Plaintiff recovered well after surgery and responded effectively to medication therapy. A.R. 129. The ALJ's statements regarding the weight she accorded Dr. Sy's opinions are found on page 5 of his decision (A.R. 125) and his discussion of the

medical evidence is found on pages 5-9 (A.R. 125-129). The decision makes clear that the ALJ relied on record evidence to support all of the reasons listed in his discussion of Dr. Sy's opinions.

The ALJ notes the following: a March 2009 general examination finding that despite reports of radiculopathy, Plaintiff was able to heel-walk and toe-walk without any difficulty and without the use of an assistive device (A.R. 127); physical exams were unremarkable and showed normal gait, no edema, and full muscle strength (A.R. 127); unremarkable cardiovascular and gastrointestinal follow-up exams (A.R. 127); in an October 2010 cardiologist exam, Plaintiff denied shortness of breath, dizziness, and fainting (A.R. 128, 789); treatment for Plaintiff's conditions were conservative with routing prescriptions for medications, which she reported were effective and decreased her symptoms (A.R. 127-129); and a motor exam by Dr. Ottney where the Plaintiff was able to tandem walk, squat, hop, had a full range of motions in her major joints, and demonstrated normal fine and gross motor function (A.R. 129). The Court finds the ALJ's explanation is supported by substantial evidence.

Second, the ALJ reasoned that Dr. Sy's opinion is inconsistent with her own medical notes, which indicate Plaintiff had recovered well from her surgeries and had normal physician examinations. A.R. 127.  An incongruity between the treating doctor's questionnaire and her medical records is a specific and legitimate reason for rejecting the doctor's opinion of claimant's limitation. *Tommasetti v. Astrue*, 533 F. 3d 1035, 1041 (9th Cir. 2008) (affirming the ALJ's finding that a physician's questionnaire responses were inconsistent with the medical record when the physician's own records did not provide support for the limitations set out in the questionnaire).  The ALJ cited to several records showing an inconsistency between Dr. Sy's original findings and her responses to the medical questionnaire. A.R 129.  For example, the ALJ cited to medical notes from February 2010 where Dr. Sy opined that Plaintiff had a "full range of motion" in her extremities and had "no tenderness" in her back. *Id*.  The ALJ also cited to Dr. Sy's medical notes finding that the Plaintiff's pain specialist was "not doing any intervention"

and the Plaintiff looked "comfortable." A.R. 129, 807. Thus, this finding was a specific and legitimate reason supported by substantial evidence for the ALJ to discount the treating physician's opinions.

Third, the ALJ found that Dr. Sy's opinions that Plaintiff had moderately severe limitations in several areas of mental functioning were contrary to Plaintiff's mild psychological symptoms, positive response to psychotropic medication, and unremarkable mental status exams. A.R. 125. An ALJ may reject a treating physician's opinion if the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F. 3d 1219, 1228 (9th Cir. 2009) (finding that an ALJ properly discounted a treating physician's opinion that was not based on the physician's own clinical findings). Although Plaintiff's mental status is not an issue in this appeal,[2] Dr. Sy's opinions show that she was inclined to find moderately severe to severe limitations even without clinical findings to support such opinions. The ALJ found little support for Dr. Sy's psychological findings and thus discounted her opinions. Thus, substantial evidence supported the ALJ's decision not to rely on Dr. Sy's opinions.

Fourth, Dr. Sy's medical opinions were contradicted by the opinions of Dr. Elizabeth A. Ottney, D.O., an examining physician who found Plaintiff had greater abilities than those identified in Dr. Sy's opinions. The ALJ noted that Dr. Ottney found Plaintiff had a "full range of motion of all major joints" and "full muscle strength in her upper and lower extremities." A.R. 129. The ALJ also noted that Dr. Ottney opined Plaintiff ambulated with a "normal gait and pace." *Id*. Dr. Ottney opined Plaintiff was capable of occasionally lifting twenty pounds and frequently lifting ten pounds without any limitations in standing, walking, sitting, climbing ramps and stairs, stooping, kneeling, crouching, crawling, reaching, handling, fingering, or feeling. A.R. 768-78. The ALJ accorded "great weight" to Dr. Ottney's opinion because it was consistent with the

---

[2] Plaintiff states in her Opening briefing that the ALJ's treatment of Plaintiff's mental impairments is not "directly relevant to this appeal." Doc. 23 at 28.

- 10 -

1 medical record as a whole showing Plaintiff responded well to conservative treatment and
2 was not compliant in treatment recommendations. A.R. 130.

3 Dr. Sy's opinions were also contradicted by state agency physicians Dr. James J.
4 Green and Dr. Christopher Maloney. AR 50-52; A.R. 87. Like Dr. Ottney, Drs. Green
5 and Maloney opined that Plaintiff could lift and carry twenty pounds occasionally and ten
6 pounds frequently. They also agreed that Plaintiff could sit and stand about six hours in
7 an eight-hour workday. A.R. 130.

8 Dr. Sy's opinions were contradicted by the opinions of three medical sources.
9 Therefore, the ALJ therefore could discount Dr. Sy's opinion for specific and legitimate
10 reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830-31.

11 Plaintiff argues that the ALJ committed legal error by placing "great weight" on
12 the medical opinion of examining physician Dr. Ottney and "significant weight" to a
13 portion of the opinions of Dr. Green and Dr. Maloney. Doc. 23 at 15. Although Plaintiff
14 is correct that ALJs must generally accord the greatest weight to the medical opinion of a
15 treating physician and reduced weight to non-treating and non-examining physicians, the
16 contradicted opinions of treating physicians can be discounted for specific and legitimate
17 reasons supported by substantial evidence. *Lester*, 81 F.3d at 830 (citing *Embrey,* 849
18 F.2d at 422).

19 The Court concludes that the ALJ provided specific and legitimate reasons,
20 supported by substantial evidence, for discounting Dr. Sy's opinions. The decision was
21 not legal error.

22 **B.     Plaintiff's Subjective Testimony**
23 **1.     Legal Standard**

24 In evaluating the credibility of a claimant's testimony regarding subjective pain or
25 other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine
26 whether the claimant presented objective medical evidence of an impairment that could
27 reasonably be expected to produce some degree of the pain or other symptoms alleged;
28 and if so with no evidence of malingering, (2) reject the claimant's testimony about the

severity of her symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). The ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991).

In weighing a claimant's credibility, the ALJ may consider a claimant's reputation for truthfulness, inconsistencies either in the claimant's testimony or between the claimant's testimony and conduct, the claimant's daily activities, the claimant's work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

## 2. The ALJ's Assessment of Plaintiff's Credibility

First, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. A.R. 129. Then, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent with the RFC assessment. *Id.*

The ALJ found that Plaintiff had made inconsistent statements regarding the effectiveness of her treatment. *Id.* The ALJ made these findings[3] on page 9 of his decision. A.R. 129. Plaintiff argues that her testimony was not inconsistent because epidural injections are not meant to provide permanent relief. However, Plaintiff testified at the hearing that she did "not experience any relief" after the epidural injections. A.R. 31- 32. Thus, her testimony three years later that the injections were unhelpful was not

---

[3] The ALJ explained that Plaintiff testified the epidural steroid injections did not help her pain symptoms. However, a review of the record indicates that Plaintiff told pain management specialist Dr. Asim Khan her radicular pain "improved significantly with epidural steroid injections and medication." A.R. 129, 903.

- 12 -

credible. The ALJ correctly found Plaintiff's statement was inconsistent with the medical record showing the injection provided her symptomatic relief. A.R. 129.

The ALJ also noted that Plaintiff's statements of disabling limitations were inconsistent with the objective medical record. The ALJ found that Plaintiff's medical record showed normal gait, muscle strength, and a full range of motion. A.R. 127, 129. The ALJ then found that Plaintiff had mostly normal examinations and diagnostic findings. *Id.* The ALJ cited to the medical record showing Plaintiff had an unremarkable heart exam, controlled cardiac symptoms, and "mild" peripheral vascular disease. A.R. 128. In addition, the ALJ found that Plaintiff's gastrointestinal symptoms were mostly normal with only occasional heartburn, some difficulty swallowing, and "mild" esophagitis. *Id.* Plaintiff argues that the ALJ did not possess the professional qualifications for an independent analysis of the medical evidence. However, the ALJ did not independently analyze the medical evidence. The ALJ cited to physician notes and objective evidence in the record to support his findings. For example, the ALJ notes that Plaintiff's stress tests were "negative" and an upper gastrointestinal endoscopy was unremarkable. A.R. 128. The ALJ also quoted the results of the pulmonary function test showing "unlikely" obstruction. *Id.* Lastly, the ALJ cited to Dr. Tosca's treatment notes that indicated Plaintiff's diabetes was "controlled" on a diet. *Id.* The ALJ therefore did not replace findings from diagnostic or physical examinations with his own assessments.

Third, the ALJ noted that Plaintiff's testimony was inconsistent because her symptoms are well managed by conservative treatment. The ALJ must carefully consider the type and effectiveness of treatment when evaluating symptoms, including pain. 20 C.F.R. § 404.1529(c)(3)(iv)-(v). Impairments that can be controlled effectively with medication are not disabling for the purpose of determining SSI benefit eligibility. *Warre v. Com'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). The ALJ cited to objective evidence in the record showing Plaintiff's gastrointestinal, cardiovascular, and diabetic symptoms were effectively managed with medication and diet. A.R. 128-29. Plaintiff argues that the ALJ failed to fully address all of Plaintiff's symptoms. (Doc. at

29.) However, in his decision, the ALJ cited to a June 2009 examination where the patient was "doing well" on her medication regimen and denied any side effects. A.R. 127.

Fourth, the ALJ found Plaintiff's symptom testimony less than credible based on her reported good activities of daily living. An ALJ may consider a claimant's daily activities in weighing a claimant's credibility. *Orn*, 495 F. 3d at 636. In *Orn*, the court reasoned that an "adverse credibility finding based on activities may be proper if a claimant engages in numerous daily activities involving skills that could be transferred to the workplace." *Id.* at 639. The ALJ noted that the claimant can perform standard household chores—including cooking, cleaning, mopping, laundry, and yard work. A.R. 125, 129. The ALJ also cited to evidence that Plaintiff assists her grandchildren with homework, shops for groceries, and regularly provides childcare for five grandchildren. A.R. 129.[4]

Plaintiff's argues that the ALJ's citations to the record do not support his findings. She argues that the ALJ made no finding that she spent a substantial part of a typical day engaged in activities inconsistent with the finding of disability. The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits because home activities are not easily transferable to what may be the more grueling environment of the workplace where it might be impossible to periodically rest or take medication. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1986). But if a claimant "engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities." *Burch v. Barnhart,* 400 F.3d 676, 680 (9th Cir. 2005). The ALJ stated that Plaintiff can perform "standard household chores, assist her grandchildren with

---

[4] The ALJ also cited to the exhibits that describe Plaintiff's daily activities. A.R. 125, 129. The evidence shows that Plaintiff does "household chores" and "play[s] games" with her grandchildren. A.R. 979. Also, the Plaintiff exercises 1-2 times a week by walking 15-30 minutes, mops, washes dishes, does laundry, folds clothes, does grocery shopping, and makes dinner. A.R. 730, 979. The Plaintiff told Dr. Tosca that she "can't rest much because she is caring for 5 children." A.R. 821.

1 homework, shop for groceries, and regularly provide childcare." The ALJ then found that Plaintiff's "level of activity is wholly inconsistent" with her testimony that she cannot sit, stand, or walk for brief periods. *Id.*

When "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d at 954 (finding that when an ALJ's credibility determination is supported by substantial evidence in the record, the reviewing court may not engage in second-guessing). Here, the ALJ's credibility determination was proper. The ALJ gave clear and convincing reasons supported by substantial evidence for discounting Plaintiff's testimony and used ordinary techniques of credibility evaluation. Thus, the ALJ's reasons for rejecting Plaintiff's subjective testimony are sufficient to meet the standard required by the Ninth Circuit.

## VI. Conclusion

The Court has considered the record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. The Court concludes that the ALJ provided specific and legitimate reasons, supported by substantial evidence, for discounting Dr. Sy's opinions, and the ALJ's decision is not based on legal error. The Court also concludes that the ALJ provided clear and convincing reasons supported by substantial evidence for finding Plaintiff less than fully credible.

Accordingly,

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is affirmed. The Clerk shall enter judgment accordingly and terminate this case.

Dated this 19th day of March, 2015.

Honorable John Z. Boyle
United States Magistrate Judge